**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

Larry "Craig" Treynor, an individual

       Plaintiff,

                                 CASE NO. 19-cv-753

v.

                                 HON: Hala Y. Jarbou

Knoll, Inc., a Delaware corporation,

       Defendant.

---

| | |
|---|---|
| **KREIS, ENDERLE, HUDGINS & BORSOS, P.C.** | **JACKSON LEWIS P.C.** |
| Jesse L. Young (P72614) | Timothy J. Ryan (P40990) |
| *Attorneys for Plaintiff* | Linda L. Ryan (P67686) |
| 8225 Moorsbridge, P.O. Box 4010 | *Attorneys for Defendant* |
| Kalamazoo, MI 4900 | 250 Monroe NW, Suite 400 |
| (269) 324-3000 | Grand Rapids, MI 49503 |
| jyoung@kehb.com | (616) 940-0230 |
| | Timothy.Ryan@jacksonlewis.com |
| | Linda.Ryan@jackonlewis.com |

---

### DEFENDANT, KNOLL, INC.'S  MOTION FOR SUMMARY JUDGMENT

      Defendant, Knoll, Inc. by its attorneys, Jackson Lewis P.C., hereby moves for summary judgment in its favor and against Plaintiff pursuant to Fed. R. Civ. P. 56 on all counts of the complaint, and for dismissal for failure to state a claim pursuant to Fed. R. Civ Pro. 12(c) as to Count V of Plaintiff's Complaint. This motion is supported by the accompanying brief and exhibits thereto, and other papers and pleadings of record.

December 11, 2020

                              Respectfully submitted,
                              JACKSON LEWIS, P.C.

                              */s/ Timothy J. Ryan*
                              Timothy J. Ryan (P40990)
                              Linda L. Ryan (P67686)
                              *Attorneys for Defendant*
                              250 Monroe NW, Suite 400

Grand Rapids, MI 49503
(616) 940-0230
Timothy.Ryan@jacksonlewis.com
Linda.Ryan@jackonlewis.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

Larry "Craig" Treynor, an individual

        Plaintiff,

                                     CASE NO. 19-cv-753

v.

                                     HON: Hala Y. Jarbou

Knoll, Inc., a Delaware corporation,

        Defendant.

---

| | |
|---|---|
| **KREIS, ENDERLE, HUDGINS & BORSOS, P.C.** | **JACKSON LEWIS P.C.** |
| Jesse L. Young (P72614) | Timothy J. Ryan (P40990) |
| *Attorneys for Plaintiff* | Linda L. Ryan (P67686) |
| 8225 Moorsbridge, P.O. Box 4010 | *Attorneys for Defendant* |
| Kalamazoo, MI 4900 | 250 Monroe NW, Suite 400 |
| (269) 324-3000 | Grand Rapids, MI 49503 |
| jyoung@kehb.com | (616) 940-0230 |
| | Timothy.Ryan@jacksonlewis.com |
| | Linda.Ryan@jacksonlewis.com |

---

**<u>DEFENDANT, KNOLL, INC.'S BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AND FOR DISMISSAL FOR FAILURE TO STATE A CLAIM</u>**

# TABLE OF CONTENTS

I.     Introduction .................................................................................................... 7

Ii.    Statement of Facts .......................................................................................... 7

A.    Mr. Treynor's Employment And Discharge. ............................................... 7

B.    Facts Relevant to The Disability Discrimination Claims. ........................... 9

C.    Facts Relevant to The Age Discrimination Claims...................................... 10

D.    Facts Relevant to The Family Medical Leave Act Interference Claim. ............... 11

III.   Argument ....................................................................................................... 11

A.    Standard ........................................................................................................ 12

B.    The Disability Discrimination Counts are Subject to Summary Judgment. ........... 13

C.    The Age Discrimination Claims Are Subject To Summary Judgment................ 15

D.    The FMLA Interfrence Claim Should Be Dismissed on Summary Judgment and Because The Complaint Fails to State a Claim. ..................................................... 19

IV.    Conclusion ..................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................14

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................14

*Chappell v GTE Benefits Corp*,
    803 F.2d 261 (6th Cir. 1986) ...............................................................17

*Collins v Yellow Freight Systems*,
    93 Fed. Appx. 854 (6th Cir 2004).................................................16, 17

*Copeland v. Machulis*,
    57 F.3d 476 (6th Cir. 1995) .................................................................14

*Donahoo v Master Data Center*,
    282 F Supp 2d 540 (ED MI, 2003) ......................................................22

*Geiger v Tower Auto*,
    579 F.3d 614 (6th Cir. 2009) ...............................................................17

*Hawkins v. Genesys Health Sys.*,
    704 F. Supp. 2d 688 (E.D. Mich. 2010)...............................................15

*Phelps v Yale, Inc.*
    986 F.2d 1020 (6th Cir. 1993) .............................................................17

*Ragsdale v Wolverine Worldwide, Inc.*,
    581 U.S. 81 (2002).............................................................................22

*Randall v Wilson Sporting Goods*,
    1998 U.S. Dist. LEXIS 5154 (E.D. Mich.) .........................................18

*Schmidli v. City of Fraser*,
    784 F. Supp. 2d 794 (E.D. Mich. 2011)...............................................16

*Town v. Mich. Bell Tel. Co*,
    455 Mich. 688 ..............................................................................17, 18

*Tower Auto, supra*
    579 F.3d 614, 626 ...............................................................................18

**Statutes**

42 U.S.C. §12102(3)(B) ..................................................................................................16

ADA ..............................................................................................................................15, 16

ADEA ..............................................................................................................................17

ELCRA ............................................................................................................................17

Family Medical Leave Act (FMLA) ..............................................................................13

Federal Age Discrimination in Employment Act, 29 USC sec 621 et. seq. ..................17

Federal Age Discrimination in Employment Act (ADEA) ............................................17

FMLA ....................................................................................................................... *passim*

Michigan Elliot Larson Civil Rights Act ......................................................................17

Michigan Elliott Larsen Civil Right Act, MCL 2201 et. seq. ......................................17

**Other Authorities**

29 C.F.R. 825.216(a) ......................................................................................................23

Fed. R. Civ. P. 12(b)(6) ..................................................................................................14

Fed. R. Civ. P. 56 ........................................................................................................1, 14

Fed. R. Civ. P. 56(c) ......................................................................................................14

## I.  <u>INTRODUCTION</u>

This is an employment case. It arises out of the termination of plaintiff, Larry (Craig) Treynor's employment with defendant Knoll, Inc.  Plaintiff's complaint against Knoll is stated in five counts. He alleges disability and age discrimination in violation of Federal and Michigan law. He also alleges interference with his rights under the Family Medical leave Act (FMLA). In fact, Plaintiff was discharged because he falsified vendor invoices for the purpose of circumventing his authorized spending limit. Plaintiff's Complaint should be dismissed for the following reasons:

1.      The allegations of the Complaint, and the undisputed facts, establish that Plaintiff did not have any disability and he was not regarded as being disabled.

2.      The undisputed evidence establishes that Plaintiff was discharged because of his manipulation of the vendor invoices and there is no evidence sufficient to raise an inference of unlawful age or disability discrimination.

3.      As alleged in his Complaint, at the time of his discharge Plaintiff had exceeded the twelve weeks of job protected leave required by the FMLA by approximately eight weeks. Based on authority directly on point from the United Stated Supreme Court, under such circumstances there can be no claim for FMLA interference.

## II.  <u>STATEMENT OF FACTS</u>

### A.  MR. TREYNOR'S EMPLOYMENT AND DISCHARGE.

Knoll is an office furniture manufacturer. It had a plant located in Kentwood Michigan. Plaintiff began his employment at the Kentwood plant on January 2, 2014. (Ex A., Complaint Paragraph 8, ECF 17 PageID. 91) He was a maintenance supervisor. (Ex. B Treynor Dep. p. 25) In that position he supervised several union maintenance employees. (Ex B., Treynor dep. p. 25,

86) He was discharged because he manipulated invoices from an outside vendor so that he could issue approvals for expenditures which exceeded his spending authority.

As a maintenance supervisor Mr. Treynor had authority to incur expenses from outside contractors to provide maintenance services which were beyond the capability of Knoll's maintenance workforce. (Ex. B Treynor Dep. p. 14)   He had a specific dollar limit on his authority to approve such expenses. (Id.) The basic process was that when invoices from outside contractors came into the maintenance department, if they were within Plaintiff's approval authority, he would review them, approve them for payment and submit them to the accounts payable department for payment. (Id at pp. 14, 50-51 and Ex. C, Dykhouse Dep p. 26) If an invoice exceeded his authority, he was required to submit it to his supervisor for review and approval. (Ex C, Dykhouse Dep. p. 26) Initially Plaintiff's approval authority was $5000.00. (Ex B. Treynor Dep. p.14). In 2016 Tony Dykhouse became Mr. Treynor's supervisor. (Ex. C, Dykhouse Dep p. 12) Mr. Dykhouse revised the approval limits for the department. Mr. Treynor's approval limit was revised to $1500.00.  Mr. Treynor confirms that he was informed of his new limit, and he fully understood that his limit was $1500.00. (Ex B, Treynor Dep p. 14, pp. 50, 56). Mr. Dykhouse imposed the new limits because he had responsibility for the department budget and wanted more control over expenditures. (Ex. C, Dykhouse Dep. pp. 28-9)

Plaintiff was discharged on December 3, 2018 because he directed a vendor to split a large invoice, which exceeded his authority, into six smaller invoices, each within his spending authority. He then authorized payment of the smaller invoices. In November 2018 Mr. Dykhouse received an inquiry from the accounts payable department regarding invoices from the vendor, TMI Air Compressors Inc. (Ex. C, Dykhouse Dep. p. 47) Mr. Dykhouse asked Plaintiff about the TMI invoices. (Id. at p. 48) In researching the invoicing history, Mr. Dykhouse reviewed emails

8

between Plaintiff and TMI. The emails showed that TMI had initially submitted an invoice for $8127.00 and that Plaintiff directed TMI to split the invoice to six smaller invoices so that each would be within his approval authority. (Id, at p. 49) Plaintiff admits that that is exactly what he did. Having received the large TMI invoice, Plaintiff sent an email to Kendra Diemer, TMI's financial manager, wherein he directed Ms. Diemer "**to divide this invoice to smaller invoices my limit is $1500. It looks like 6 invoices**". (emphasis added). (Ex. B, Treynor Dep p. 56, Ex. D, Email) Ms. Diemer did as Mr. Treynor directed and resubmitted six invoices for $1362 each. (Ex. B, Treynor Dep p. 57: Ex. D, email and invoices) Mr. Treynor approved the six invoices and submitted them for payment. (Ex. B. Treynor Dep. p. 51)

Four people had input into the decision to discharge Plaintiff based on his manipulation of the TMI invoice. Having discovered the invoice manipulation, Mr. Dykhouse conferred with Robert Carpenter who was the Human Resources Manager at the Kentwood site. They concluded that discharge was the appropriate action, but they could not take that action without additional approval. (Ex. E, Carpenter Dep. p. 27) Thus, they conferred with Wendi Rudholm and Karen Angeny. (Id.) Ms. Rudholm was the Human Resources Manager for West Michigan Operations. She was based in the Muskegon Michigan facility. (Ex, F, Rudholm Declaration). Karen Angeny was the Vice President of Human Resources for the entire Company. She was based in East Greenville Pennsylvania. (Ex. G, Angeny Declaration). After conferring, Ms. Rudholm and Ms. Angeny concurred that termination was warranted. (Ex. E Carpenter Dep. 17).

### B.  FACTS RELEVANT TO THE DISABILITY DISCRIMINATION CLAIMS.

While two counts of the Complaint are for discrimination based on disability, Plaintiff has no condition that qualifies as disability under federal or state law. In fact, he does not even so allege. His allegation is that Knoll perceived him to have a disability. (Ex. A, Complaint

paragraphs 49, 50 ,57 and 58, EFC No. 16 PageID. 83) Apparently, his claim is that the perception arose because he had knee surgery. He had one knee replaced in March of 2018. (Id. at paragraph 19) He was off work for ten weeks. (Id at paragraph 10) In early June, 2018 he returned to work and "resumed his job duties without any problems". (Id. at paragraph 21) He went on leave again on October 3, 2018 to have the other knee replaced. (Id. at paragraph 22). In November, 2018 Plaintiff's physician notified Knoll that Plaintiff was released to return to work on December 19, 2018 without restrictions. (Id. at paragraph 33)

No evidence has been adduced to support the claim that Knoll held the perception that Plaintiff had a disability. Mr. Dykhouse and Human Resource Manager Robert Carpenter were the two Knoll officials who recommended that Plaintiff's employment be terminated. Both understood that Mr. Treynor's knee problem was exactly as it appeared – a temporary condition, correctable by surgery, which would have no long term or permanent effect on Mr. Treynor's ability to do his job or otherwise engage in the normal activities of life. (Ex. F, Carpenter Declaration; Exhibit G, Dykhouse Declaration). Likewise, Ms. Angeny and Ms. Rudholm never held any belief that Plaintiff had any condition which would limit his ability to do his job or otherwise impair his ability to engage in the normal activities of life. (Ex. H, Angeny Declaration; Ex. I Rudholm Declaration)

**C.  FACTS RELEVANT TO THE AGE DISCRIMINATION CLAIMS.**

Counts III and IV of the Complaint allege age discrimination under Federal and State law. Mr. Treynor was 59 years old when Knoll hired him. (Ex. B, Treynor Dep. p. 27) He was 63 years old at the time of his discharge. (Id.) According to Mr. Treynor, the reason he believes his age motivated his discharge is that on one occasion, about six months before his discharge, he and Mr.

10

Dykhouse were discussing a project, Mr. Dykhouse said "We don't do things the old school way".

(Ex A., Treynor Dep. p. 84)

### D.  FACTS RELEVANT TO THE FAMILY MEDICAL LEAVE ACT INTERFERENCE CLAIM.

Count V alleges interference with Mr. Treynor's rights under the Family Medical Leave Act (FMLA). Specifically, the allegation is that Knoll interfered with Mr. Treynor's rights under the FMLA by not returning him to his position in December 2018. (Ex. A, Complaint paragraph 79, EFC No. 16 PageID. 79)  In fact, since by December 2018 Mr. Treynor had long exhausted his FMLA entitlement his discharge could not have interfered with any rights he had under that Act.[1]

As discussed in more detail below, The FMLA entitles eligible employees to twelve weeks of job protected leave in a twelve-month period.  It is undisputed that in the Spring of 2018 Plaintiff took ten weeks of leave. (Ex A, Complaint Para 19, ECF 17 PageID. 91). On October 3, 2018 he started his second leave of the year to have surgery on his other knee. (Id. at paragraph 31). He remained on this second leave for nine weeks before he was discharged. (Id at paragraphs 33-34) During both leaves he was paid short term disability benefits to compensate him for lost pay and Knoll continued to provide his health insurance benefit. (Ex. A, Treynor Dep. p. 36-7 and 77; Ex. F, Rudholm declaration)

Since the FMLA requires that employers provide no more than twelve weeks of job protected leave per year, when Mr Treynor went on his second leave on October 3, 2018 for his second knee replacement he had two more weeks of FMLA leave available. Thus, by October 17, 2018 he had fully exhausted his FMLA entitlement.

### III.   ARGUMENT

---

[1] Defendant's calculates FMLA usage based on the rolling year method. (Ex. I, Rudholm Declaration)

## A. STANDARD

A motion for summary judgment pursuant to Fed. R. Civ. P. 56 should be granted if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A mere scintilla of evidence is insufficient. In response to such a motion, a plaintiff cannot rest upon his pleadings and is required to present <u>significant</u> probative evidence in support of his claims.  See *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995).  (Emphasis added.)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or 12(c), a plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and are sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, to avoid dismissal under Rule 12(b)(6), the complaint must contain enough facts to establish a plausible, as opposed to merely a possible, entitlement to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (citing *Twombly*, 550 U.S. at 557, 570).

In this case, Plaintiff's claims are subject to summary judgment and dismissal for failure to state a claim because:

    a.  He cannot meet his prima facie requirements for an age discrimination claim, and even if he could, he cannot rebut the articulated, non-discriminatory reason for his discharge- the manipulation of the TMI invoices.

    b.  His knee replacement does not, as a matter of law constitute a disability under Federal or Michigan law, and it is undisputed that no one in involved in the

discharge decision regarded him as having an impairment which rose to level of a disability.

    c.   As a matter of law, a failure to return an employee to his former position after his FMLA has expired does not create a claim for FMLA Interference. Since the Complaint alleges that he had exhausted his FMLA entitlement at the time of his discharge he has not even stated a claim for FMLA interference.

## B. THE DISABILITY DISCRIMINATION COUNTS ARE SUBJECT TO SUMMARY JUDGMENT.

Count I is Plaintiff's ADA claim and Count II states his PWDCRA claim. Neither count alleges that Plaintiff was disabled. Both counts allege that he was "regarded as" disabled. Where a Plaintiff pleads a "regarded as" disability claim, he must show the following elements: (1) the plaintiff was regarded as having a determinable physical or mental characteristic; (2) the perceived characteristic was regarded as substantially limiting one or more of the plaintiff's major life activities; and (3) the perceived characteristic was regarded as being unrelated to the plaintiff's ability to perform the duties of a particular job or position or to the plaintiff's qualifications for employment. *Hawkins v. Genesys Health Sys.,* 704 F. Supp. 2d 688, 701 (E.D. Mich. 2010); citing *Michalski v. Bar-Levav,* M.D., 463 Mich. 723; 625 N.W.2d 754 (2001).

To establish that an impairment rises to the level of disability a plaintiff must produce "some evidence beyond the mere existence and impact of a physical impairment." *Chiles v. Machine Shop, Inc.,* 238 Mich. App. 462, 473, 606 N.W.2d 398 (1999). As such, for a "regarded as" disability claim, a plaintiff's "showing that an employer thought that [they were] somehow impaired is not enough; rather a plaintiff must adduce evidence that a defendant regarded the plaintiff as having an impairment that substantially limited a major life activity – just as with an actual disability." *Chiles,* 238 Mich. App. at 475.

13

Courts have also consistently held that disability does not include temporary medical conditions, even if those conditions require extended leaves from work.  *Id.*  at 479-80 (noting that a temporary back injury is not a substantial limitation on any major life activity).  Moreover, under the ADA, which courts look to when rendering decisions under the similar PWDCRA, a person cannot be "regarded as having…an impairment" or disability if the impairment is "transitory" such that it has "an actual or expected duration of 6 months or less."  42 U.S.C. §12102(3)(B). Thus, an employee cannot be regarded as disabled by their employer if their impairment is viewed as temporary in nature.  *Id.* at 480 (noting that the types of impairments that are generally temporary are often commonly shared by many in the general public).

In *Schmidli v. City of Fraser*, 784 F. Supp. 2d 794  (E.D. Mich. 2011), the Eastern District of Michigan held that the plaintiff failed to show that the defendant perceived her to have a disability that was either substantially limiting or that affected her "major life activity" of working.  Specifically, the plaintiff's only evidence of perceived disability was that the defendant required her to take a leave of absence and seek counseling as a result of employee complaints about her.  However, the court stated that "even viewing this evidence in a light most favorable to plaintiff, there is no indication that defendant expected plaintiff's perceived mental illness to be permanent or to have any long-term effect" and to the contrary, the defendant's suggestion that plaintiff seek counseling was evidence that her perceived disability, at most, as a temporary condition which could be overcome. *Id.* at 806-07.

In *Collins v Yellow Freight Systems,* 93 Fed. Appx. 854 (6th Cir 2004) The plaintiff alleged "regarded as" claims under the ADA and the parallel Ohio statute. The plaintiff had a back injury which resulted in lifting restrictions which were incompatible with his job. He was discharged. The court held that he was not disabled because the restrictions did not disqualify him for a broad range of jobs. It further held that that since there was no evidence that the defendant perceived him as being disqualified from a broad

14

range of jobs, his "regarded as" claims also failed. The court held that summary judgment had been properly granted in favor of the defendant. *Id* at 861-62.

Here, the undisputed evidence is that Plaintiff left for his surgery on October 3 and that Knoll was informed that he could return to work without restriction 2 ½ months later on December 19. There is no evidence that anyone involved regarded Mr. Treynor as being disabled within the meaning of the statutes. The understanding of those involved in the discharge was, that at most, Plaintiff would be laid up for a definite period of time while his knee healed, and then he would be back to his normal activities, just like after the same surgery on the other knee a few months earlier. As demonstrated by the cases cited above, counts I and II of plaintiff's complaint, are, therefore, subject to summary judgment.

## C. THE AGE DISCRIMINATION CLAIMS ARE SUBJECT TO SUMMARY JUDGMENT

Plaintiff alleges that he was discharged because of his age in Violation of the Federal Age Discrimination in Employment Act, 29 USC sec 621 et. seq. (ADEA), and the Michigan Elliott Larsen Civil Right Act, MCL 2201 et. seq. (ELCRA). To establish a prima facie case of discrimination under ADEA, and ELCRA, Mr. Treynor must show that he was: (1) a member of a protected class, (2) subject to an adverse employment action, (3) that he was performing his job at a level that met Knoll's legitimate expectations, and that (4) he was replaced by a person outside of the protected class. *See*, *e.g.*, *Town v. Mich. Bell Tel. Co,* 455 Mich. 688, 694-95; 568 N.W.2d 64 (1997); *see also Geiger v Tower Auto*, 579 F.3d 614, 626 (6th Cir. 2009) ("ELCRA claims are analyzed under the same standards as federal ADEA claims."). Ultimately Mr. Treynor must prove that age was the "but-for" cause of the challenged employment decision. *Phelps v Yale, Inc.* 986 F.2d 1020, 1023 (6th Cir. 1993); *Chappell v GTE Benefits Corp*, 803 F.2d 261, 265-66 (6th Cir. 1986)

Even if Mr. Treynor could establish his *prima facie* case then Knoll's only burden is to **articulate** a legitimate, nondiscriminatory reason for discharge.  The burden then shifts back to Mr. Treynor to prove by a preponderance of the evidence that the articulated reason for discharge was a pretext **and** that the true "but for reason" reason was unlawful age discrimination. *Town v Mich. Bell, supra and Geiger v Tower Auto, supra.*

Here, Mr. Treynor cannot establish a prima facie case. He fails on the third element. He did not meet Knoll's legitimate expectations. Mr. Treynor's own testimony confirms that he knew his spending approval limit was $1500.00. He confirms that the TMI invoice exceeded his approval limit. And he confirms that his purpose in directing TMI to split up the invoice and resend it was to circumvent the approval limit Knoll expected him to follow.

Even if Mr. Treynor could make a prima facie case, Knoll has articulated a non-discriminatory reason for the discharge – the irregularities with the TMI invoice. According to Mr. Treynor the "evidence" he has that age was the true "but for" cause is that he says approximately six months before his discharge Mr. Dykhouse referred to some process as "old school". Isolated stray comments about age are routinely held insufficient to create a question of fact at the pretext step of the analysis. In *Randall v Wilson Sporting Goods*, 1998 U.S. Dist. LEXIS  5154 (E.D. Mich.) the plaintiff argued that evidence that his supervisor had referred to him as "old man" was sufficient to rebut the employers articulated legitimate reason his discharge. The court disagreed. In dismissing the case on summary judgment, it provided a very helpful discussion on how stray comments are evaluated in these cases:

> In <u>Cooley v. Carmike Cinemas, Inc., 25 F.3d 1325 (6th Cir. 1994)</u>, the Sixth Circuit held that in age discrimination cases, statements allegedly showing an employer's age bias are to be evaluated by considering four factors:
>
> (1) whether the statements were made by a decision-maker or by an agent within the scope of his employment;

(2) whether the statements were related to the decision-making process;

(3) whether the statements were more than merely vague, ambiguous or isolated remarks; and

(4) whether they were made proximate in time to the act of termination.

 *Id. at 1330*. None of these factors is individually dispositive of age discrimination, but rather, they must be evaluated as a whole, taking all of the circumstances into account. Id.

Thus, the mere fact that purportedly age discriminatory comments were made by the plaintiff's supervisor at some point in time is not necessarily evidence of age bias in the decision-making process. Hence, a plaintiff's direct supervisor's comment that "we don't necessarily like grey hair," although found to be more than a "stray remark," was held to be insufficient proof of age discriminatory pretext because the comment "was uttered in an ambivalent manner and was not tied directly to [the plaintiff's] termination." *Nesbit v. Pepsico, Inc., 994 F.2d 703, 705 (9th Cir. 1993)*.

Similarly, in *Bolton v. Scrivner, Inc., 36 F.3d 939 (10th Cir. 1994)*, cert. denied, *513 U.S. 1152, 130 L. Ed. 2d 1071, 115 S. Ct. 1104 (1995)*, a supervisor's direct reference to the plaintiff as an "old fart" did not support a showing of pretext because the comments were isolated and no nexus was shown between the comments and the adverse employment decision. Therefore, the Tenth Circuit affirmed the district court's grant of summary judgment on the plaintiff's ADEA claim. See also, *Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989)* (plaintiff's supervisor's remark in reference to one of plaintiff's co-workers who was 62 years old that he did not want his office run by "little old Jewish ladies like his mother-in-law" held not to constitute direct evidence of age animus). The *Carter* court was persuaded that this comment did not evidence actionable age animus in the plaintiff's case particularly because the comment was not directed at the plaintiff personally. *Id.* The court held that "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age" constitute evidence of age discrimination. *Id.*

The Sixth Circuit has adhered to the supervisor-plus-nexus-to-termination requirement in evaluating age discriminatory comments. Thus, in *Phelps v. Yale Security, Inc., 986 F.2d 1020 (6th Cir. 1993)*, cert. denied, *510 U.S. 861, 114 S. Ct. 175, 126 L. Ed. 2d 135 (1993)*, the court upheld the district court's grant of judgment to the defendant-employer notwithstanding the verdict because the plaintiff's evidence of age animus consisted of evidence of two statements: (1) that her supervisor told her eight months before her termination that she had been

transferred from a more responsible position because she was too old to continue at that prior secretarial position and (2) that a month later the supervisor told her that her fiftieth birthday "was a cause for concern." *986 F.2d at 1025*. The appellate court found the comments to be "too abstract, in addition to being irrelevant and prejudicial" because the comments had been made nearly a year before her termination to have influenced the termination decision. *986 F.2d at 1025-26*. In addition, the court regarded the comment about the plaintiff's birthday to be too ambiguous to establish any conclusive inferences. *Id.*

In *Gagne v. Northwestern National Insurance Co., 881 F.2d 309 (6th Cir. 1989)*, the court affirmed summary judgment for the defendant-employer on the plaintiff's age discrimination claim which was predicated upon the alleged age animus of her supervisor evidenced by his comment that he "needed younger blood". *Id. at 315-16. See also, Steeves v. Chatham Mfg. Co., 1995 U.S. Dist. LEXIS 17242 (W.D. Mich. 1995)* (supervisor's statement that sales force was made up of "dinosaurs" was not directed at plaintiff individually and, therefore, was insufficient to sustain plaintiff's claim of age discrimination).

The Court finds that under the facts and circumstances presented in the instant case, the comments of Auger relied upon by Plaintiff, even if Auger made them (which he denies) do not demonstrate a predisposition on Auger's or the company's part to discriminate against older employees. Importantly, Plaintiff presents no evidence whatsoever that establishes a nexus between these stray comments and the disciplinary action taken by Wilson against him. If they were made at all, the evidence indicates that they were simply off-handed comments completely though nothing of Auger's "old man" comments, that they were made in a "Hey, old man, give me a hand with this" attitude, never insinuating that Plaintiff could not do something well because of his age.

*Id.* at 26-28. Thus, the court held that calling the plaintiff "old man" was insufficient to raise a question of fact, and summary judgment was, therefore, granted.

Here, as described by Mr. Treynor, the alleged "old school" comment was isolated, it was not directed at Mr. Treynor, but at a method of completing a task, and it was made six months before he was discharged. Thus, this claimed statement is entirely insufficient raise any inference that age was a "but for" cause of his discharge.

In fact, use of the phrase "old school" has been held as not probative of pretext when it is not made close in time to the discharge and is unrelated to the discharge decision. See e.g. Gilster v. Humana, Inc., 2016 U.S. Dist. LEXIS 5953 (S.D. Ohio Jan. 19, 2016).

### D.  THE FMLA INTERFRENCE CLAIM SHOULD BE DISMISSED ON SUMMARY JUDGMENT AND BECAUSE THE COMPLAINT FAILS TO STATE A CLAIM.

Plaintiff does not have any legitimate FMLA interference claim because it is undisputed that by the time he was discharged (December 3, 2020) his entitlement of twelve weeks of leave under the FMLA had expired. As plaintiff alleges in his Complaint, he took 10 weeks of leave in the spring of 2018 to have one knee replaced and he began his second leave On October 3, 2018. Thus, by October 17, 2018 he had used up his twelve weeks of FMLA entitlement.

In *Blake v Seabury & Smith, Inc.*, 2007 U.S. Dist. Lexis 85558, a case from the Eastern District of Michigan, the court, quoting from *Dortman v ACO Hardware, Inc.,* 405 F. Supp. 2d 812, 821 (E.D. MI 2005) provided the following confirmation that an FMLA interference claim cannot be maintained where the employee is complaining about not being returned to work after exhausting his twelve weeks of FLMA leave:

> [t]here is no right to reinstatement . . . if the employee is unable to *return* to work at the end of [his or] her 12-weeks of allotted FMLA time. *29 C.F.R. § 825.214(b)* ("If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA."); *Cehrs v. Northeast Ohio Alzheimer's Research Center, 155 F.3d 775, 784 (6th Cir. 1998)*; *see also Manns v. ArvinMeritor, Inc., 291 F. Supp. 2d 655, 659 (N.D. Ohio 2003)* (once an employee exceeds his twelve weeks (or sixty workdays) of FMLA leave,   additional leave is not protected by the FMLA and the termination of the employee will not violate the FMLA); *Hicks v. Leroy's Jewelers, Inc., 225 F.3d 659, 2000 WL 1033029 *5 (6th Cir. 2000), cert. denied*, 531 U.S. 1146, 121 S. Ct. 1084, 148 L. Ed. 2d 959 (2001)* (an employee who cannot return to work at the end of the approved leave is not entitled to job restoration).

Since Mr. Treynor's Complaint alleges that he was never given a written notice designating his leaves as FMLA leaves, his theory apparently is that his FMLA allotment was never used up and so he did have FMLA rights as of December 3. That theory has been expressly rejected by the United States Supreme Court. In *Ragsdale v Wolverine Worldwide, Inc*., 581 U.S. 81 (2002) the plaintiff was not returned to work after she had been on a leave of absence for more than twelve weeks. She sued alleging that the failure to return her to work interfered with her rights under the FMLA. She made exactly the same claim that Plaintiff is making here: Since had not been given written notice designating her leave as falling under the FMLA, her time off could not be counted against her FMLA allotment, and thus she retained her FMLA right to reinstatement, even after she had been gone for more than twelve weeks. She based her argument on a Department of Labor regulation that existed at the time. The Supreme Court struck down the regulation and affirmed the lower courts' grant of summary judgment to the employer. *Id.* at 96.

In *Donahoo v Master Data Center*, 282 F Supp 2d 540 (ED MI, 2003) The plaintiff was on leave for more than twelve weeks. She was not returned to her job. She sued on an FMLA interference theory claiming that because she had not received written designation that her time off was being counted against her FMLA allotment it couldn't be counted as such, and so her FMLA rights continued. The court held because that theory had been invalidated by the Supreme Court's decision in *Ragsdale,* supra., The defendant was entitled to summary judgment on the FMLA claim. Because her FMLA entitlement had been exhausted the plaintiff had no right under the FMLA to return to her job. *Id.* at 555

The *Ragsdale* and *Donahoo* cases are identical to this one in all material respects. Thus, the Plaintiff's FMLA Interference claim is likewise subject to summary judgment. In fact, since

20

the complaint alleges that he was not discharged until well after his FMLA allotment had been

exhausted, the Complaint fails to state a claim for FMLA interference.

In addition, even if Plaintiff had not exhausted his FMLA time off allotment at the time of

his discharge Knoll still had the same right to terminate his employment due to the irregularities

with the TMI invoices. The FMLA regulations specifically state that he would have "no greater

right reinstatement… [from FMLA leave] that if he been continuously employed during the FMLA

leave period". 29 C.F.R. 825.216(a).

### IV.    <u>CONCLUSION</u>

For the reasons stated herein, Defendant, Knoll, Inc. requests that the complaint be

dismissed in its entirety.

December 11, 2020

> Respectfully submitted,
> JACKSON LEWIS, P.C.
>
> */s/ Timothy J. Ryan*
> Timothy J. Ryan (P40990)
> Linda L. Ryan (P67686)
> *Attorneys for Defendant*
> 250 Monroe NW, Suite 400
> Grand Rapids, MI 49503
> (616) 940-0230
> Timothy.Ryan@jacksonlewis.com
> Linda.Ryan@jackonlewis.com

21

**PROOF OF SERVICE**

The undersigned hereby certifies that the foregoing instrument was served upon all parties/attorneys in the above cause at their respective addresses disclosed on the pleadings on December 11, 2020 by:

☐ Hand Delivery           ☐ U. S. Mail
☐ Overnight Delivery      ☐ FAX
√ ECF (E-filing)            ☐ E-mail


*/s/ Timothy J. Ryan*
Timothy J. Ryan

22